UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRANDON CHARLES NELSON,

   Plaintiff,

  v.

OREGON DEPARTMENT OF
CORRECTIONS; DR. THOMAS
BRISTOL; DR. GEORGE DEGNER;
DR. STEVE SHELTON,

   Defendants.
_____

Case No. 3:15-cv-02437-MC

OPINION AND ORDER

MCSHANE, District Judge:

  Plaintiff, a former inmate housed by the Oregon Department of Corrections (ODOC), filed suit pursuant to 42 U.S.C. § 1983 and alleged a claim of deliberate indifference to his serious medical needs arising from his medical treatment after a hip replacement surgery. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion is granted and this case is dismissed.

1 - OPINION AND ORDER

BACKGROUND

Plaintiff is a former inmate who was incarcerated at Columbia River Correctional Institution (CRCI) in Portland, Oregon, and the Oregon State Penitentiary (OSP) in Salem, Oregon during the time period relevant to his claims.

On March 23, 2015, Dr. Robert Zirschky, a physician at Willamette Surgery Center, performed hip replacement surgery on plaintiff and provided aftercare instructions that included physical therapy after surgery. DiGiulio Decl. Att. 1 at 47 (ECF No. 33); Pl.'s Response (ECF No. 40) Ex. 1. Plaintiff was transferred to OSP after his surgery. There, he was prescribed a pain medication, Oxycodone, with one tablet to be taken every four hours for five days. DiGiulio Decl. Att. 1 at 22.

On March 26, 2015, plaintiff was observed walking with the assistance of a cane and going to the recreation yard. The next day, plaintiff was observed walking throughout the ward. *Id.* Att. 1 at 44-45. Dr. Ole Hansen prescribed four more days of Oxycodone. *Id.* Att. 1 at 22.

On March 28, 2015, plaintiff was noted to have full range of motion in his hip. *Id.* Att. 1 at 44. On March 29, 2015, plaintiff requested a reduction in his pain medication dosage and an increase in its frequency. *Id.* Att. 1 at 43.

On March 30, 2015, Dr. Degner discontinued plaintiff's Oxycodone prescription and replaced it with a prescription for Tramadol, with one to two tablets taken three times a day for three days, and then one tablet taken daily for three more days. DiGiulio Decl. Att. 1 at 21. The next day, Nurse Henkelman noted that plaintiff was ambulatory and encouraged him to increase his activity. *Id.* Att. 1 at 43.

On April 1, 2015, plaintiff had an x-ray and follow-up appointment with Dr. Becker, an orthopedist, who noted that plaintiff's gait was "excellent without external support" and that

plaintiff's hip replacement was successful with "no sign of complication." *Id.* Att. 1 at 42. Dr. Becker recommended that plaintiff be transferred back to CRCI with a low bunk for three months, remain medically idle for two weeks, perform only light work for three months, and perform the physical therapy exercises that had been shown to him. *Id.*

On April 4, 5, and 6, 2015, plaintiff requested and received dosages of Tylenol. *Id.* Att. 1 at 40. On April 10, 2015, plaintiff reported that he was experiencing pain since the expiration of his Tramadol prescription, and he was seen walking with a limp and the assistance of a cane. *Id.* Att. 1 at 37. Dr. Glenn Greeder prescribed Tramadol for five additional days to be taken as needed. DiGiulio Decl. Att. 1 at 20.

On April 15, 2015, plaintiff again requested a new prescription for Tramadol. Dr. Greeder denied the request and discussed ODOC's policy regarding chronic narcotic use. *Id.* Att. 1 at 20, 37 Dr. Greeder informed plaintiff that he might experience pain from his surgery but that his condition did not warrant narcotics. *Id.*

On April 21, 2015, Dr. Thomas Bristol examined plaintiff and noted he was walking with an even gait and could get up and down from the exam table without difficulty. *Id.* Att. 1 at 38. Plaintiff reported continuing low back pain and asked for a renewal of his Tramadol prescription. Instead, Dr. Bristol ordered x-rays and a trial prescription for Mobic. *Id.* Att. 1 at 21, 38.

On April 24, 2015, plaintiff received x-rays on his lumbar spine. They showed "little degenerative change" and a potential pars fracture. DiGiulio Decl. Att. 1 at 12.

On April 26, 2015, plaintiff complained that the Mobic was not working and he could not sleep through the night without pain. *Id.* Att. 1 at 36. Plaintiff asked that he be allowed to participate in yoga and walking classes. *Id.* Dr. Bristol indicated that he had no objection to plaintiff taking yoga classes provided that he avoid hyperextension. *Id.* Att. 1 at 20, 36.

On May 5, 2015, plaintiff again saw Dr. Bristol with complaints of low back pain and again requested a prescription for Tramadol. *Id.* Att. 1 at 36. Dr. Bristol prescribed Tramadol for three weeks and encouraged plaintiff to exercise his back. *Id.* Att. 1 at 19, 36.

On June 1, 2015 plaintiff was seen by Dr. Bristol regarding his lower back and knee pain and requests for more pain medication. DiGiulio Decl. Att. 1 at 35. Dr. Bristol ordered knee x-rays and blood tests. On June 5, 2015, plaintiff had x-rays of both knees, which showed "normal joint spaces with smooth articular surfaces." *Id.* Att. 1 at 11, 18.

On June 18, 2015, plaintiff had a follow-up appointment with Dr. Bristol. Plaintiff again requested pain medication. Dr. Bristol diagnosed early osteoarthritis and prescribed a trial of Relafen. *Id.* Att. 1 at 18, 34.

On July 13 and 16, 2015 plaintiff was examined for complaints of back spasms and lumbar cramping that interfered with his ability to sleep. Dr. Bristol ultimately prescribed Neurontin and "gentle" back exercises. *Id.* Att. 1 at 18, 33.

On August 11, 2015, plaintiff saw Dr. Bristol and again complained of persistent low back pain and muscle spasms. Plaintiff reported that the Neurontin helped for a short period of time and that he was exercising gently. Dr. Bristol believed the muscle spasms were secondary to degeneration and he increased plaintiff's dosage of Neurontin. *Id.* Att. 1 at 18, 33.

On August 17, 2015, plaintiff saw Dr. Bristol again and requested physical therapy for his chronic low back pain. Dr. Bristol noted plaintiff's lumbar range of motion was moderately restricted, he had a "mild" right lumbar spasm, and his gait was "fairly unremarkable." DiGiulio Decl. Att. 1 at 32. Dr. Bristol ordered lumbar x-rays and indicated that he would present plaintiff's request for physical therapy to ODOC's Therapeutic Level of Care (TLOC) Committee. *Id.* Att. 1 at 17, 32.

On August 20, 2015, Dr. Bristol presented plaintiff's request for physical therapy to the TLOC Committee. The TLOC committee denied plaintiff's request and recommended that he continue his home physical therapy plan. *Id.* Att. 1 at 5.

On August 21, 2015, x-rays were taken of plaintiff's lumbar spine area and compared to the x-rays taken on April 24, 2015. Dr. Roger Blair stated, "I do believe there is a fracture of at least the left L5 pars. Based on the lateral views only I remain convinced of pars fracture on one or both sides. Otherwise there is no other pars abnormality. Pedicles and transverse processes are intact." *Id.* Att. 1 at 10.

On August 28, 2015, plaintiff met with Dr. Greeder to review the x-ray report and the TLOC Committee's decision regarding his request for physical therapy. *Id.* Att. 1 at 32.

On August 31, 2015, plaintiff was seen by Dr. Bristol for a follow-up appointment and reported that his back pain had continually worsened. Dr. Bristol ordered another set of lumbar x-rays and requested a consult with Dr. Becker. *Id.* Att. 1 at 4, 17, 31.

On September 3, 2013 plaintiff received additional spine x-rays. DiGiulio Decl. Att. 1 at 9. On September 9, 2015, plaintiff requested that his Neurontin prescription be renewed on a "regular basis" and Dr. Bristol denied his request. *Id.* Att. 1 at 31.

On September 28, 2015, plaintiff had further x-rays which confirmed a L-5 pars fracture. *Id.* Att. 1 at 8.

On September 29, 2015, Dr. Becker examined plaintiff and the x-ray reports and diagnosed spondylolisthesis, the slippage of a vertebra backward or forward, with instability symptoms. *Id.* at ¶ 6, Att. 1 at 29-30. Dr. Becker gave plaintiff a low back care sheet and prescribed an L-S corset to help his stability. Dr. Becker also ordered follow-up appointments as needed and recommended that plaintiff not stoop or lift and twist. *Id.*

On October 13, 2015, Dr. Bristol presented plaintiff's request for a back brace to the TLOC committee. The TLOC committee denied the request and suggested more exercises. DiGiulio Decl. Att. 1 at 3, 16, 28. On November 19, 2015, plaintiff requested a third daily Neurontin dose to ease his pain, and Dr. Bristol agreed. *Id.* Att 1 at 16, 28.

On December 17, 2015, plaintiff met with Dr. Bristol regarding the denial of his request for a back brace. Dr. Bristol explained that a change in the medical literature showed that the back brace was not beneficial for plaintiff's condition. *Id.* Att 1 at 27.

On December 30, 2015, plaintiff filed suit in this case. Plaintiff's amended civil rights complaint raises a federal claim based on defendants' failure to provide necessary medical care for his hip and back pain.

## DISCUSSION

Plaintiff alleges claims of deliberate indifference to his serious medical needs under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."). Specifically, plaintiff alleges the defendants failed to provide him with recommended physical therapy and ceased prescribing pain medication after his hip replacement surgery. Am. Compl. at 3 (ECF No. 9). Plaintiff further alleges that defendants failed to provide him with a back brace and adequate pain medication after he was diagnosed with a lumbar condition. *Id.*

Defendants move for summary judgment on grounds that the evidence does not demonstrate deliberate indifference to plaintiff's serious medical needs. To prevail, defendants must show that there is no genuine dispute as to any material fact and they are entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

To sustain a claim for deliberate indifference to his serious medical needs, plaintiff must establish the existence of "a serious medical need" and that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). Deliberate indifference is established when a prison official knew that a prisoner faced a "substantial risk of serious harm" and disregarded that risk by failing to take reasonable measures to abate the risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746.

As recounted above, the record makes clear that plaintiff was not denied medically necessary treatment so as to constitute deliberate indifference. According to the evidence presented, plaintiff received pain medication after his hip replacement surgery, including narcotic and non-narcotic pain medication. Plaintiff also had numerous follow-up appointments with ODOC physicians, who responded to his complaints and prescribed him pain medication as needed. While physicians denied a few of plaintiff's requests for narcotic pain medication, they explained that the requests were not supported by objective medical evidence and were not warranted. ODOC physicians also referred plaintiff to an orthopedist, ordered numerous x-rays

for comparison, and counseled plaintiff on stretching and exercising his back to alleviate his pain. *See generally supra* at 2-6; DiGiulio Decl.

Granted, the TLOC committee did not approve plaintiff's requests for physical therapy sessions or a back brace, even though both requests had been approved by physicians. To establish deliberate indifference on this basis, plaintiff must set forth sufficient facts suggesting "that the course of treatment" the TLOC committee "chose was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1094 (9th Cir. 2016) (citation omitted). The record does not suggest that the choice of treatment was medically unacceptable. The TLOC committee informed plaintiff that his request for outside physical therapy sessions was denied because he was on a home physical therapy plan and Dr. Becker had demonstrated and discussed the exercises plaintiff should be performing. DiGiulio Decl. Att. 1 at 5. Further, the TLOC committee found that a back brace was not medically warranted, and Dr. Bristol explained that a change in the medical literature did not support the use of a back brace for his condition. DiGiulio Decl. Att. 1 at 3, 16, 27.

Plaintiff does not dispute these facts. Instead, plaintiff argues that he did not receive "the same level of care" that he would have received outside of prison. Pl.'s Response at 1. However, the relevant standard is not whether plaintiff received the same care as a non-prisoner with the same medical issues. The standard is whether defendants intentionally disregarded a substantial risk of serious harm to plaintiff. *Farmer*, 511 U.S. at 847. The record clearly demonstrates that defendants were not deliberately indifferent to plaintiff's medical needs.

At most, the record reflects differences of opinion among medical providers and plaintiff regarding the need for physical therapy sessions and a back brace. The fact that plaintiff

preferred different medical care does not render the chosen course of treatment deliberately indifferent. "A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). Even if plaintiff contends that defendants misdiagnosed the severity of his medical conditions, inadequate medical treatment due to negligence or inadvertence does not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105-06; *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("negligence in diagnosing or treating a medical condition" does not support a claim for deliberate indifference) (citation omitted).

Given the undisputed facts of record, no genuine issue of material fact precludes summary judgment on plaintiff's claim.

## CONCLUSION

For the reasons explained above, plaintiff fails to establish deliberate indifference to his serious medical needs, and defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED.

IT IS SO ORDERED.

DATED this 12th day of January, 2018.

    _s/Michael J. McShane_____
    Michael McShane
    United States District Judge